IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | MEMORANDUM OPINION AND ORDER DENYING MOTION TO RECONSIDER MOTION TO SUPPRESS |
| vs. | |
| GERALDO ANTONIO PLANELLS-GUERRA, | Case No. 2:06-CR-00617 PGC |
| Defendant. | |

Geraldo Planells-Guerra — charged with possessing at least 500 grams of

methamphetamine with the intent to distribute — filed a motion to suppress the evidence against

him.  Specifically, he sought to suppress all evidence police officers seized from his car,

including any evidence of controlled substances or drug trafficking materials.  Mr. Planells-

Guerra argued the court should suppress the evidence because police officers arrested him in

violation of state law and because no exception to the exclusionary rule applied.

Mr. Planells-Guerra's claims are without merit for three reasons.  First, the officers

validly arrested Mr. Planells-Guerra under Utah law, and his arrest complied with the Fourth

Amendment.  In Utah, a police officer can make a warrantless arrest for the public offense of

driving with a suspended license if the crime is committed or attempted "in the presence" of the officer.  Here, the officer arrested Mr. Planells-Guerra upon discovering Mr. Planells-Guerra's driver's license was suspended, observing him exit the driver's side of the car, and hearing him and two credible witnesses state that Mr. Planells-Guerra had been in the process of driving.  Also, because either the witnesses' statements or the officer's own observations would have led a reasonable person in the officer's position to believe that Mr. Planells-Guerra was driving with a suspended license, the officer had probable cause for the arrest as well.

Further, even an invalid arrest under state law would not mandate exclusion of the evidence because the federal exclusionary rule does not apply to state law violations — its application is governed by federal constitutional principles.  In this case, the officer had probable cause upon learning that Mr. Planells-Guerra's driver's license was suspended.  And none of the evidence suggests that the arrest was otherwise unreasonable under the Fourth Amendment or any other constitutional provision.

Finally, even if the exclusionary rule applied to state law violations, the "good-faith" exception would bar application of the rule in this case.  The good-faith exception applies to both warrantless searches and to objectively reasonable police officer mistakes of law.  Here, any mistake of law and reliance thereon by the officer was objectively reasonable because the ongoing nature of the crime supported a reasonable belief that the "in presence" requirement was satisfied.  At the same time, the officer could reasonably believe the arrest was valid based upon the existence of probable cause alone.

For these reasons, the court therefore denies Mr. Planells-Guerra's motion to reconsider

his motion to suppress.

## BACKGROUND

### I.      Factual Background

Around 3:45 a.m. on August 26, 2006, Denise Nelson called 9-1-1.  Ms. Nelson was a passenger in a car driven by her friend, Sarah Cunningham, traveling from the Grand Canyon. Ms. Nelson, frightened, told the dispatcher at the Grand County Sheriff's Office that a blue sedan had been following her and her friend while driving on Highway 191 from Monticello, Utah, to Moab, Utah.  The driver of the blue sedan had followed them for a while, closely at times, even declining to pass Ms. Cunningham's vehicle when the road allowed for it.  At one point, the following sedan flashed its lights at Ms. Cunningham's car.  Mr. Planells-Guerra was later identified as the driver of this blue sedan.

On reaching Moab, Ms. Cunningham pulled immediately into a Shell gas station.  Mr. Planells-Guerra pulled in also.  Because of this, the 9-1-1 dispatcher instructed Ms. Nelson to leave the Shell station and drive further into town.  Following the dispatcher's instructions, Ms. Cunningham drove north, stopping at a Maverick gas station.  Ms. Cunningham pulled into a parking stall facing the convenience store associated with the gas station.  Mr. Planells-Guerra pulled his blue sedan up to the gas pump behind Ms. Cunningham's car.  Within two minutes police officers arrived.  The officers arrived in time to see Mr. Planells-Guerra step out of the driver's side door of his car.  As Mr. Planells-Guerra began walking toward the convenience store, Tom Nixon, a Moab City Police Officer, confronted him.

Officer Nixon asked Mr. Planells-Guerra to stop to talk to him.  Officer Nixon had seen

only Mr. Planells-Guerra in the car when he pulled up, and he soon confirmed Mr. Planells-Guerra was the only person in the car when it was following Ms. Cunningham.  Ms. Cunningham identified Mr. Planells-Guerra as the man who had followed her and the sole occupant of the car, and Mr. Planells-Guerra admitted to being alone in the car.  With the help of a Spanish-speaking officer, Laurencia Boucher, Officer Nixon inquired into why Mr. Planells-Guerra had followed Ms. Cunningham and Ms. Nelson.  Mr. Planells-Guerra explained he was heading in the same direction as the women and just happened to make the same stops at the same gas stations.

In response to questions, Mr. Planells-Guerra explained that he had purchased his sedan a week or so earlier from Hilare Teater.  Later, though, Mr. Planells-Guerra explained that *he had sold* the car to Hilare Teater in 2005, not that he had bought it.  The police determined his statements about the ownership of the car were generally inconsistent.  The sedan bore Nebraska license plates.  When the officers questioned Mr. Planells-Guerra about his travel plans, Mr. Planells-Guerra's explanation changed at least three times.  For instance, he indicated he was headed from Phoenix to Nebraska to work out a problem with the registration of his car, but he also referred to visiting a sick brother.  Officer Nixon asked for Mr. Planells-Guerra's identification.  Mr. Planells-Guerra produced an Arizona driver's license, which was reported as suspended when Officer Nixon checked its status.

Officer Nixon arrested Mr. Planells-Guerra for driving with a suspended license, and placed him in his patrol vehicle.  Officers Nixon and Boucher then began to search Mr. Planells-Guerra's sedan incident to Mr. Planells-Guerra's arrest, and to conduct an inventory of the contents before it was towed.  Among other things, in their search, the officers found an oblong

tin box under the passenger seat containing about fourteen grams of whitish powder.  This powder appeared to be illegal drugs.  In addition, the officers found about fifty ears of moldy corn scattered freely in the trunk of the car.  Officer Nixon believed the corn — which had a strong, pungent odor —  to have been placed there to mask the odor of methamphetamine.  When tapping on the gas tank, Officer Nixon heard a sound inconsistent with the sounds he normally heard when tapping on gas tanks.  He thought it may be indicative of a hidden compartment.  The officers also found that Mr. Planells-Guerra had no extra clothes with him other than one pair of underwear and one pair of socks.  The officers noted that the car's gas gauge showed the tank to be one-half full.

Ultimately, the officers booked Mr. Planells-Guerra into the Ground County Jail on charges of driving with a suspended license and possession of methamphetamine.  Mr. Planells-Guerra bailed out of jail in about forty-eight hours.  His bail money consisted of $10,405 in cash — one $5 bill and the rest, $100 bills.  At the time of Mr. Planells-Guerra's arrest, officers arranged for Mr. Planells-Guerra's car to be towed and impounded by CJ's Towing.  Later, in the impound lot, a drug-sniffing dog targeted the passenger door of Mr. Planells-Guerra's car.

Based on the evidence they had compiled, the police officers applied for a search warrant. Judge Mary Manley, a judge in Utah's Seventh Judicial District, signed the search warrant on August 28, 2006, authorizing law enforcement officers to search Mr. Planells-Guerra's car. During a search conducted pursuant to this warrant, police officers found more than five pounds of methamphetamine in the dashboard of the car.  The methamphetamine had been packed in what appeared to be ground-up corn, and had been wrapped tightly in plastic.  Mr. Planells-

Guerra was ultimately charged with possessing at least 500 grams of methamphetamine with the intent to distribute.

### II.      Procedural Background

On October 27, 2006, Mr. Planells-Guerra filed a motion to suppress the evidence against him.  The court conducted a suppression hearing on December 19, 2006, and denied Mr. Planells-Guerra's motion to suppress.  Mr. Planells-Guerra later filed a motion to reconsider the court's denial of his motion to suppress — this is the motion at issue in this order.

Mr. Planells-Guerra specifically seeks to suppress the evidence seized from his vehicle as a result of the original traffic stop, as well as the evidence seized pursuant to the search warrant. Mr. Planells-Guerra argues that any evidence obtained after Officer Nixon stopped him was tainted because it was obtained in violation of Mr. Planells-Guerra's Fourth Amendment right to be free from illegal detentions and searches.  Basically, Mr. Planells-Guerra argues Officer Nixon possessed no reasonable suspicion to continue the stop beyond his check of Mr. Planells-Guerra's identification and Mr. Planells-Guerra's explanation for his behavior.  Mr. Planells-Guerra also argues the evidence should be suppressed pursuant to the exclusionary rule because Mr. Planells-Guerra's arrest was unlawful.  He alleges that the crime of driving with a suspended license was not committed "in the presence" of the police officer as required by Utah law, so the arrest was invalid under Utah law and the evidence must be suppressed.

The government responds that the police officers complied with state law when arresting Mr. Planells-Guerra, and that the validity of the arrest under state law has no impact on the applicability of the exclusionary rule, since it applies only to federal constitutional violations.

And according to the government, even if the exclusionary rule applies where officers exceed their authority to arrest under state law, the good-faith exception to the exclusionary rule blocks application of the rule in this case.

## DISCUSSION

### I.        Lawfulness of the Arrest Under Utah Law

Mr. Planells-Guerra contends his arrest for driving on a suspended license was unlawful because his crime of arrest was a public offense, not committed in the officer's presence, as required by Utah law.  According to Mr. Planells-Guerra, this allegedly unlawful arrest requires the suppression of the evidence against him.

Utah law allows a police officer to make a warrantless arrest for a public offense if the offense is committed or attempted "in the presence" of the police officer.[1]  "Presence" is defined to include "all of the physical senses or any device that enhances the acuity, sensitivity, or range of any physical sense, or records the observations of any of the physical senses."[2]  Driving with a suspended license, the crime for which Officer Nixon arrested Mr. Planells-Guerra, is a class B or a class C misdemeanor under Utah law — a public offense.[3]

Mr. Planells-Guerra argues that, construing these statutes together, his arrest was illegal because he did not drive with a suspended license in Officer Nixon's presence.  Instead, Officer Nixon only witnessed Mr. Planells-Guerra leave the driver's side of his car after it had stopped at

---

[1] UTAH CODE ANN. § 77-7-2(1).

[2] *Id.*

[3] *See* UTAH CODE ANN. § 53-3-227.

the gas station.  The court finds, however, that the crime did occur in Officer Nixon's presence

sufficiently to meet the statutory requirement.  Moreover, in light of Utah case law, there does

not appear to be a strict "in-presence" requirement for warrantless public offense arrests — Utah

courts have focused on the probable cause inquiry instead.  Similarly, there is no "in-presence"

requirement for the arrest to be considered reasonable under the Fourth Amendment.

>    A.    *The Crime Occurred in the Presence of the Officers*

Even strictly construing section 77-7-2 of the Utah Code, the court finds Mr. Planells-

Guerra's crime occurred in Officer Nixon's presence sufficiently to meet the statutory

requirement.  But admittedly, this is a close question.

Mr. Planells-Guerra's conduct meets the requirements of the Utah code, first, because

what occurred in Officer Nixon's presence was an ongoing situation involving Mr. Planells-

Guerra driving with a suspended license.  Officer Nixon saw Mr. Planells-Guerra step out of the

driver's side of the car.  Mr. Planells-Guerra admitted to driving the car and credible citizen

witnesses identified him as the driver and sole occupant of the car.  In other words, Mr. Planells-

Guerra was the only person who had been in the car — there is no dispute about this issue.  Since

he was alone, he was the only person who could drive the car away.  And Mr. Planells-Guerra

explained to officers that he was driving from Phoenix to Nebraska.  To put it another way, Mr.

Planells-Guerra was going to keep driving.  He was not planning to leave his car permanently

parked at a gas pump at a gas station in the middle of Moab, Utah, at 4:00 a.m.  And knowing

that Mr. Planells-Guerra's license was suspended, Officer Nixon could not reasonably have let

him drive the vehicle out of the parking lot.[4]

If somehow Mr. Planells-Guerra was not in the process of driving his car away from the gas pump, he was in the process of leaving it stalled at the gas station — right in front of a gas pump.  This would apparently qualify as a trespass.[5]  Consequently, the officers could have arrested Mr. Planells-Guerra either for trespassing or for driving with a suspended license. Whether he drove or abandoned his car, he would have been committing a crime and given Officer Nixon grounds to arrest him.  The Utah Supreme Court has upheld the validity of an arrest for one crime if a legal arrest could have been made for another crime.[6]

In sum, from the facts, it is clear that Mr. Planells-Guerra had been driving on a suspended license, and if Officer Nixon had not arrested him, he would have continued to do so. In this sense, he was involved in an ongoing driving situation in Officer Nixon's presence.

> B.      *Under Utah Law, Probable Cause Is Determinative of the Validity of a Public Offense Arrest Under Section 77-7-2*

Even if Mr. Planells-Guerra had not committed his crime of arrest in the presence of Officer Nixon, his arrest was legal under section 77-7-2 because it was based on probable cause. Although Mr. Planells-Guerra frames his argument in light of the officers' alleged violation of the statute, under Utah case law the inquiry basically boils down to a determination of the officers' probable cause to make the arrest.

---

[4] *See United States v. Williams*, 980 F. Supp. 1225, 1230 (D. Utah 1997) (upholding physical arrest of the defendant for driving with a suspended license because the officer "could not, as the defendant suggests, merely issue a citation and let him drive off").

[5] *See* MOAB, UTAH, CODE § 9.20.040 (2006).

[6] *See State v. Bryan*, 395 P.2d 539, 540 (Utah 1964).

Utah courts have broadly interpreted the "in-presence" requirement for public offense arrests, finding the most important consideration to be probable cause.  In *State v. Bills*,[7] the Utah Court of Appeals articulated this common-sense notion, explaining the reason police officers can make warrantless arrests pursuant to section 77-7-2 when a crime is committed in their presence is that they necessarily have probable cause the arrestee committed the crime if they witnessed him commit it.  "[A] law enforcement officer has probable cause whenever the crime is committed in the presence of that officer because the observing officer knows of sufficient facts to believe that the suspect committed the crime alleged."[8]  Likely for this reason, when courts assess a challenge to an arrest under section 77-7-2 of the Utah Code, they evaluate the arresting officer's probable cause.[9]

In *Orem City v. Bovo*,[10] the Utah Court of Appeals used this approach when dealing with a situation similar to that at hand.  In *Bovo*, the defendant was arrested and charged with reckless driving and disorderly conduct.  Reckless driving is a class B misdemeanor in Utah, and disorderly conduct is an infraction.  The defendant had followed the complainants' car on an Orem City, Utah, road.  The defendant was tailgating the complainants, honking, and flashing his lights.  At one point, the defendant tried to pass the complainants on the left side, over a double yellow line.  Then, the defendant tried to pass them by driving on the right shoulder of the road.

---

[7] 2005 UT App 99, 2005 Utah App. LEXIS 99.

[8] *Id.* at *3.

[9] *Id.* at *2.

[10] 2003 UT App 286, 76 P.3d 1170.

The complainants called 9-1-1 and the dispatcher directed them to follow the defendant until a police officer could pull him over.  Soon after, a police officer stopped the defendant and talked with him.  While the officer's back was turned, the defendant mouthed a threat to the complainants and made an obscene gesture.  The police officer observed that the defendant was belligerent and aggressive, but he based his probable cause to arrest on the complainants' description of events.  He did not witness the defendant's driving, the obscene gesture, or the threat.

On appeal following conviction, one of the defendant's challenges centered on the "in the presence" language of section 77-7-2 of the Utah Code.[11]  The Utah Court of Appeals recognized that the defendant had committed public offenses, but that the arresting officer did not witness any of the defendant's criminal conduct.  Rather, the officer's probable cause for the arrest arose from the witnesses' statements.  But the Utah Court of Appeals found that by challenging his arrest under section 77-7-2, the defendant was really challenging the officer's probable cause.[12]  So in assessing the legality of the defendant's arrest, the court relied on Utah case law concerning probable cause.  Specifically, the court relied on the test articulated by the Utah Supreme Court:

> the determination of whether an officer can make a warrantless arrest "should be made on an objective standard: whether from the facts known to the officer, and the inferences [that can] fairly . . . be drawn therefrom, a reasonable and prudent person in [the officer's] position would be justified believing that the suspect had committed the offense."[13]

---

[11] *Id.* ¶ 14.

[12] *Id.*

[13] *Id.* (quoting *State v. Trane*, 2002 UT 97, ¶ 27, 57 P.3d 1052).

Applying this test to section 77-7-2, the court concluded that "[h]ere, the officers acted upon statements from credible witnesses that Defendant committed reckless driving and disorderly conduct.  Thus, the officers acted reasonably and Defendant's arrest was proper."[14]   In other words, the court found that the witnesses' statements would lead a reasonable, prudent person in the officer's position to believe the defendant had committed the offense.  And because probable cause existed, the arrest was legal. "It is axiomatic that state courts are the final arbiters of state law."[15]  Therefore, from *Bovo*, it is clear that the question underlying a challenge under section 77-7-2 relates to probable cause and that the "in the presence" language of the statute is simply a way to ensure probable cause exists for public offense arrests.

With regard to probable cause under section 77-7-2, Mr. Planells-Guerra's situation is even more compelling than that in *Bovo*.  Either the witnesses' statements *or* Officer Nixon's own observations would have led a reasonable, prudent person in Officer Nixon's position to believe Mr. Planells-Guerra had committed the offense of driving with a suspended license. There is no dispute that Mr. Planells-Guerra's license was suspended, so the only question was whether Officer Nixon could reasonably conclude that Mr. Planells-Guerra was driving on that suspended license.  The evidence of this fact was overwhelming.  Officer Nixon personally witnessed Mr. Planells-Guerra leave the driver's side of the car at the gas station.  He heard Mr. Planells-Guerra admit he had been driving the car.  And Officer Nixon's observations went hand-in-hand with the credible witness statements of Ms. Nelson and Ms. Cunningham.  They reported

---

[14] *Id.* ¶ 15.

[15] *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004).

Mr. Planells-Guerra had driven the car and was the only person in the sedan.  No reasonable

question exists, then, that Officer Nixon had probable cause to arrest Mr. Planells-Guerra for

driving with a suspended license.  Hence, under *Bovo*, the arrest was valid under Utah law.

## II.      Applicability of the Federal Exclusionary Rule to a State Law Violation

Even if the arrest were somehow invalid under Utah law, there is no basis for the

suppression of the evidence because state law cannot provide a basis for suppression in a federal

proceeding.  As a general rule, an arrest in violation of state law does not provide a basis for

applying the exclusionary rule.  "[T]he fact that the arrest, search, or seizure may have violated

state law is irrelevant as long as the standards developed under the Federal Constitution were not

offended."[16]  It is "well-established" that "an arrest in violation of state law may still be

constitutionally reasonable."[17]  In other words, although "'the question of compliance with state

law may well be relevant in determining whether police conduct was reasonable for Fourth

Amendment purposes,'" a "violation of state law is not, without more, necessarily a federal

constitutional violation."[18]  The Tenth Circuit has broadly proclaimed its support of this basic

proposition, noting that it is "well established in this circuit that 'in federal prosecutions the test

---

[16] *United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999).

[17] *United States v. Bezerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005).

[18] *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) (quoting *United States v. Baker*, 16 F.3d 854, 856 n.1 (8th Cir. 1994)); *see also United States v. Wright*, 16 F.3d 1429, 1435 (6th Cir. 1994); *see also United States v. Chirino*, No. 06-1207-CR, 2007 WL 1087263, at *9 (2d Cir. Apr. 12, 2007); *United States v. Syphers*, 426 F.3d 461, 468 (1st Cir. 2005); *United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999); *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995); *United States v. Clyburn,* 24 F.3d 613, 616 (4th Cir. 1994); *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992).

of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers.'"[19]  Thus, while the Tenth Circuit has found police conduct relevant when assessing a federal constitutional violation, it has determined a violation of state law, without more, does not necessarily equate to a federal constitutional violation.[20]

With respect to the much more narrow context of *searches incident to arrest*, limited authority from other jurisdictions suggests that the validity of the search depends on the validity of the arrest under state law.  For instance, the District Court of the Middle District of Pennsylvania found that because a police officer only has authority to search pursuant to a valid arrest, the court must determine whether the arrest complied with state law when a search incident to an arrest is challenged.  The validity of the arrest is governed by state law in this circumstance because state law "delineates the methods by which an officer may take a person into formal custody (thus exposing the officer to the danger that a search incident to arrest is designed to ameliorate)."[21]

But this is not the majority approach.  Most courts hinge the validity of searches incident to arrest and the application of the exclusionary rule on whether the arrest violated federal Fourth

---

[19] *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999).

[20] *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) (quoting *United States v. Baker*, 16 F.3d 854, 856 n.1 (8th Cir. 1994)).

[21] *Christopher v. Nestlerode*, 373 F. Supp. 2d 503, 516-17 (M.D. Penn. 2005).

Amendment principles, not state law.[22]  Consequently, when an officer has probable cause to

make an arrest and the arrest does not otherwise offend constitutional principles, the resulting

search incident to arrest does not violate the Fourth Amendment even where the officers lack

authority to make the arrest under state law.

Although it has not directly ruled on the issue of whether a valid state law arrest must

precede searches incident to arrest, the Tenth Circuit seems likely to follow this majority

approach.  For one thing, although language in the United States Supreme Court's decision in

*United States v. Di Re*[23] has been cited for the proposition that officers need state law authority to

arrest before warrantless arrests are valid, the Tenth Circuit has rejected this interpretation of *Di*

*Re* rule,[24] citing the Supreme Court's later decision in *Elkins v. United States*.[25]  In *Elkins*, the

Supreme Court concluded that the Fourth Amendment "test is one of federal law, neither

enlarged by what one state court may have countenanced, nor diminished by what another may

have colorably suppressed."[26]  The Tenth Circuit recognized this as vitiating *Di Re* and other

---

[22] *See, e.g.*, *United States v. Chirino*, No. 06-1207-CR, 2007 WL 1087263, at *9 (2d Cir. Apr. 12, 2007) (stating evidence discovered during a search incident to arrest will not be excluded based on state law violations); *United States v. Jones*, 185 F.3d 459, 463 (5th Cir. 1999) (noting the propriety of an arrest for exclusionary rule purposes is measured under the Fourth Amendment, violations of state law notwithstanding); *United States v. Chapel,* No. 96-1176, 1997 U.S. App. LEXIS 7302, at *3-5 (6th Cir. Apr. 11, 1997) (same); *Bell*, 54 F.3d at 504 (same).

[23] 322 U.S. 581 (1948).

[24] *United States v. Miller*, 452 F.2d 731, 733 (10th Cir. 1971).

[25] 364 U.S. 206 (1960).

[26] *Id.* at 224.

cases holding that in absence of an applicable federal statute, state law determines the validity of an arrest.[27]  For another thing, there is no reason to think the Tenth Circuit holding that "'the exclusionary rule is only concerned with deterring [federal] Constitutional violations'"[28] will differ as applied to warrantless searches or arrests.  Therefore, the Tenth Circuit seems unlikely to follow the minority view, which requires that a valid arrest under state law precede a lawful search incident to arrest.

Such a conclusion makes good sense.  "This is so because, absent an exception, the exclusionary rule requires that evidence obtained in violation of the Fourth Amendment be suppressed.  [And the] exclusionary rule was created to discourage violations of the Fourth Amendment, not violations of state law."[29]  At the same time, because the exclusionary rule is a creature of federal law, district courts should apply it regardless of whether "the legality of the underlying arrest for the search turns on state law" to promote uniformity among federal decisions.[30]  Otherwise, application of the exclusionary rule could turn on state laws with different or more restrictive rules for arrest that do not necessarily violate the federal Constitution.[31]

In the end, all of this means that only if the arrest of Mr. Planells-Guerra violated the

---

[27] *Miller*, 452 F.2d at 733.

[28] *United States v. Green*, 178 F.3d 1099, 1105 (10th Cir. 1999) (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994)).

[29] *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992).

[30] *United States v. Mahoney*, 712 F.2d 956, 959 (5th Cir. 1983).

[31] *Bell*, 54 F.3d at 503-04.

federal Constitution would the exclusionary rule potentially apply to evidence discovered in the

later searches.  The only argument Mr. Planells-Guerra makes against the reasonableness of his

arrest under the Fourth Amendment is that Officer Nixon had no reasonable suspicion to

continue the stop past checking his identification and obtaining an explanation for his conduct.

This argument fails, however, because upon checking Mr. Planells-Guerra's identification,

Officer Nixon found his driver's license to be suspended, thereby providing probable cause for

the arrest.  Mr. Planells-Guerra's only other arguments relate to the "in-presence" requirement.

But the United States Supreme Court has never found that the Fourth Amendment imposes an "in

the presence" requirement for public offenses — in fact, the Court has not addressed the issue.[32]

At the same time, a number of circuits have specifically rejected such a requirement.[33]  And

nothing indicates the arrest of Mr. Planells-Guerra was otherwise unreasonable under the Fourth

Amendment or any other constitutional provision.  In other words, the exclusionary rule does not

apply in this circumstance, even if the officers violated state law when arresting Mr. Planells-

Guerra because the officers did not violate Mr. Planells-Guerra's federal constitutional rights.

---

[32] *See Atwater v. City of Lago*, 532 U.S. 318, 340 n.11 (2001) (declining to speculate as to whether an in-presence requirement exists under the Fourth Amendment for misdemeanor arrests).

[33] *See, e.g.*, *Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000); *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3 (1st Cir. 1997); *Pyles v. Raisor*, 60 F.3d 1211 (6th Cir. 1995) *Fields v. City of S. Houston*, 922 F.2d 1183 (5th Cir. 1991); *Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990); *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974); *see also Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (noting every circuit to address whether there is a Fourth Amendment in-the-presence requirement has held that there is not).

### III.    "Good-Faith" Exception to Warrantless Searches

Finally, even if the exclusionary rule applied to a police officer's violations of state law, the "good-faith" exception to the rule applies here to prevent suppression of the evidence. Because Officer Nixon made, at most, a mistaken but nonetheless objectively reasonable conclusion about state law, he acted in good faith.  Accordingly, suppressing the large quantities of methamphetamine found in Mr. Planells-Guerra's car is not an appropriate remedy for any legal mistake Officer Nixon may have made.

In *United States v. Leon*, the United States Supreme Court explained that the exclusionary rule is "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'"[34]  The Court, therefore, determined the exclusionary rule should not be applied to suppress reliable evidence obtained by police officers who act in reasonable reliance on a search warrant issued by a magistrate, even where the warrant is later found to be invalid, because such an application would have no deterrent effect on police officers.[35]  In other words, when police officers act "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment,"[36] the good-faith exception bars application of the exclusionary rule.

The Supreme Court later expanded on these principles in *Hudson v. Michigan* to clarify

---

[34] 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 354 (1974)).

[35] *Id.* at 918, 922.

[36] *Id.* at 918.

the bounds of the exclusionary rule.  In *Hudson*, police had obtained a warrant authorizing them to search defendant's house for drugs and firearms, but had waited only a short time after announcing their presence before entering and seizing the items.[37]  In affirming the lower court's refusal to suppress the evidence, the Court held that the exclusionary rule did not apply to a police officer's mistaken judgment about the amount of time the knock-and-announce rule required him to wait before entering a home with a search warrant.[38]

While both *Leon* and *Hudson* involved a searches pursuant to a warrant, the rationales of these decisions extend to warrantless searches and arrests as well.  *Leon*, for example, rested on the premise that the exclusionary rule was meant to deter future police misconduct, not to cure past violations of a defendant's personal rights.[39]  Therefore, the Court reasoned, the exclusionary rule should apply only where its deterrent effect outweighs its "substantial social costs."[40] Picking up its earlier language in *Leon*, the Court in *Hudson* similarly noted that the "substantial social costs" generated by the exclusionary rule include a "costly toll upon truth-seeking and law enforcement objectives [which] presents a high obstacle for those urging [its] application."[41] And for these reasons, the Court reiterated that the exclusionary rule is applicable only "where its remedial objectives are thought most efficaciously served — that is, where its deterrence benefits

---

[37] *Hudson v. Michigan*, 126 S. Ct. 2159, 2162 (2006).

[38] *Id.* at 2162, 2170.

[39] *Leon*, 468 U.S. at 906 (citation omitted).

[40] *Id.* at 907.

[41] *Hudson*, 126 S. Ct. at 2163 (quoting *Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 364–65 (1998)).

outweigh its substantial social costs [— ]"[42] in emphasizing that "the massive remedy of suppressing evidence of guilt is unjustified" except in narrow situations.[43]  Accordingly, both *Leon* and *Hudson* are consistent with the principle that — because the deterrence benefits must outweigh the high costs of excluding evidence — the lack of a warrant alone should not automatically trigger the exclusionary rule when an officer acts with otherwise objective reasonableness in making an arrest that turns up substantial evidence of guilt.  Such a conclusion is directly in line with the Court's view that "[s]uppression of evidence . . . has always been our last resort, not our first impulse."[44]

Therefore, under the principles announced in *Leon* and *Hudson*, the good-faith exception to the exclusionary rule applies here.  Officer Nixon's conclusion that state law allowed him to make an arrest of  Mr. Planells-Guerra, even if mistaken, was nonetheless objectively reasonable. As should be clear from the discussion of the legal issues in the earlier part of this opinion, a very strong argument can be made that Mr. Planells-Guerra committed the offense of driving on a suspended license in the presence of Officer Nixon.  If that conclusion was somehow ultimately incorrect, it was nonetheless reasonable under all the circumstances.

Mr. Planells-Guerra does not seriously contest the conclusion that Officer Nixon's judgment was within a zone of reasonableness.  Instead, he argues that a Tenth Circuit decision

---

[42] *Id.* (internal quotations and citations omitted).

[43] *Id.* at 2168.

[44] *Id.* at 2163.

bars use of the good-faith exception.  He points to *United States v. Herrera,*[45] where the Circuit declined to apply the good-faith exception to situation where a police officer had searched a pickup truck mistakenly believing that it was a commercial vehicle subject to an administrative inspection.  The Circuit held that it would not extend the exclusionary rule "to the facts of this case"[46] because "no third party made the determination that Herrera's truck was a commercial vehicle subject to those random warrantless inspections."[47]  *Herrera* also concluded that the officer involved should have been aware that an earlier Tenth Circuit decision precluded the stop of the pickup truck.[48]

While *Herrera* held that the good-faith exception was inapplicable on "the facts of this case," it did not — and could not — speak to the application of the exception in other circumstances.  Moreover, other more general language in *Herrera* suggests that the good-faith exception could apply to some warrantless searches.  *Herrera* explains that given the deterrent purpose of the exclusionary rule, the rule should only be invoked when suppressing the evidence will deter police misconduct.[49]  Tracking the teachings of *Leon*, *Herrera* explained, "[w]e will ordinarily not deter, nor do we want to deter, objectively reasonable police conduct."[50]

---

[45] 444 F.3d 1238 (10th Cir. 2006).

[46] *Id.* at 1251-52.

[47] *Id.* at 1253.

[48] *Id.*

[49] *Id.*

[50] *Id.*

This deterrence rationale, which the Tenth Circuit recognizes as the current, operative justification for the application of the good-faith exception applies equally well in warrantless search and arrest situations.  For instance, just as in warrant cases, if police officers without a warrant act "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment,"[51] then (as explained in *Leon*),

> excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.  Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.[52]

In other words, the objective component of the inquiry is the decisive element.  In *Herrera*, the Tenth Circuit explicated this point, noting that *Leon* "suggests that so long as officers are acting in an objectively reasonable manner, a court should not exclude evidence obtained contrary to the Fourth Amendment because to do so would not have the desired deterrent effect."[53]  To put it another way, as long as the officers objectively and reasonably believe their conduct did not violate the Fourth Amendment, it should not matter whether their conduct was based on a warrant or simply on their own probable cause.  If their conduct is objectively reasonable, then, logically, excluding the resulting evidence will fail to deter future, similar conduct because such conduct is objectively reasonable.

To be sure, some language in *Herrera* can be read to support the defendant's position

---

[51] *Leon*, 468 U.S. at 918.

[52] *Id.* at 920 (quoting *Stone v. Powell*, 428 U.S. 465, 539-40 (1976)).

[53] 444 F.3d at 1255.

here.  For instance, *Herrera* observed:

> The Supreme Court has never extended *Leon*'s good faith exception beyond circumstances where an officer has relied in good faith on a mistake made by someone other than the police; that is, on someone outside the police officer's "often competitive enterprise of ferreting out crime."[54]

But *Herrera*'s review of the Supreme Court case law, while accurate when released in April 2006, may need refinement in the wake of the Court's June 2006 decision in *Hudson*.  There, the Court emphasized that more than mere deterrence is necessary for the exclusionary rule to apply — that the deterrence benefits must outweigh the high social costs of excluding evidence.[55] Accordingly, the Court held that a police officer's mistaken violation of the knock-and-announce rule did not trigger application of the exclusionary rule,[56] underscoring that suppression of evidence should be a last — not first — resort.[57]

Moreover, *Herrera* did not hold that the good-faith exception could *never* apply to a police officer's own mistake.  Instead, *Herrera* was quite clear that it was simply holding that the good-faith exception is "*ordinarily* limited to situations when the police officer reasonably relied upon the judgment of a neutral third party."[58]  This is uncontroversial because it may ordinarily be difficult for police officers to show that they have acted in good faith when they violate the Fourth Amendment based on their own judgment rather than on the judgment of others.  (And, it

---

[54] *Id.* at 1250–51 (quoting *Leon*, 468 U.S. at 914).

[55] 126 S. Ct. at 2163, 2168.

[56] *Id.* at 2165.

[57] *Id.* at 2163.

[58] *Id.* at 1249 (emphasis added).

should be remembered that a Fourth Amendment violation requires something more than a mere mistaken factual judgment, as objectively reasonable mistakes of fact do not lead to Fourth Amendment violations.[59])  But in a situation where there has been a Fourth Amendment violation but a police officer has nonetheless acted reasonably, nothing in *Herrera* precludes application of a good-faith exception to the exclusionary rule.

It is also important to recognize that, despite its reluctance to extend the good-faith exception on the facts of *Herrera*, the Tenth Circuit has previously suggested (in *dicta*) that the good-faith exception would apply where officers relied on a mistaken, but objectively reasonable, belief that their actions were authorized under the law.  In *United States v. Johnson*,[60] the Tenth Circuit held that a state statutory regulatory scheme authorized the administrative search police officers conducted of a salvage yard.  But *Johnson* also stated that, even if the scheme did not permit the search, the good-faith exception would apply.[61]  Importantly, in *Johnson* the officers relied on *their own* objectively reasonable belief that the statutes authorized the search at issue, not the judgment of the legislature, a magistrate, or any other third party.  They also relied on their own judgment that their search fell within the statutes' permissible scope.  After its good-faith inquiry, the Tenth Circuit concluded,

the officers would have no reason to believe they could not demand to inspect inside

---

[59] *See id.* at 1246 (citing *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005), *United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004), and *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)).

[60] 408 F.3d 1313 (10th Cir. 2005).

[61] *Id.* at 1322.

> a locked container which they reasonably believed to be subject to the search . . . .
> In sum, the officers relied in good faith on the administrative inspection statutes, as
> interpreted by Oklahoma cases, and in their objectively reasonable applicability to
> the inspection conducted at Autoplex Salvage.[62]

This language suggests the good-faith exception may apply to police officers' objectively

reasonable good-faith reliance on their own mistakes.  And, as the Supreme Court held recently

in *Hudson*, where the social costs of applying the exclusionary rule outweigh its deterrent effect

in the case of an officer's mistaken judgment, reflexive resort to the blunderbuss remedy of

suppression is unwarranted.[63]

      One last point in *Herrera* is worth brief discussion.  *Herrera* seemingly implies that there

is no such thing as an objectively reasonable legal mistake by a police officer.  *Herrera* states,

albeit in a footnote, that "[w]hile an officer may make an objectively reasonable factual mistake,

a 'failure to understand the law by the very person charged with enforcing it is not objectively

reasonable.'"[64]  This footnote (which was *dicta* in *Herrera*) must know be read in light of

*Hudson*.  *Hudson* refused to apply the exclusionary rule to a situation where the police officer

involved misunderstood the legal requirements in play — specifically, the Constitution's knock-

and-announce requirements.  This court must, obviously, follow the Supreme Court's guidance in

*Hudson* and recognize that the exclusionary rule does not always apply to situations where a

police officer himself has misunderstood the applicable law.

      This court is not alone in this approach.  Since *Leon*, a number of courts have applied the

---

[62] *Id.* at 1323.

[63] *Hudson*, 126 S. Ct. at 2168.

[64] *Herrera*, 408 F.3d at 1246 n.9 (quoting *Tibbetts*, 396 F.3d at 1138).

good-faith exception to the exclusionary rule to situations where police officers made mistaken judgments in conducting warrantless searches.  For instance, the Fifth Circuit has apparently recognized such an exception.[65]  In *United States v. Williams*,[66] the district court granted a defendant's motion to suppress drug evidence uncovered during a search incident to a warrantless arrest on the grounds that the arrest was unlawful.  The Fifth Circuit reversed, holding that the arrest was lawful.  The court reasoned that even if the underlying arrest were unlawful, the court would not have suppressed the evidence discovered during the search because the federal agent who arrested the defendant acted pursuant to a good-faith belief that the defendant's conduct violated the travel restrictions of her release from prison and that the offense justified the arrest.[67]  Because the officer acted in good faith, the court found that deterrence of police misconduct — the principle justification for the exclusionary rule — would not be furthered by suppressing the evidence.[68]

Similarly, in *United States v. Ramirez-Lujan*,[69] the Fifth Circuit admitted evidence procured during a search incident to an unlawful arrest because a border patrol agent acted in good faith.  The border patrol agent noticed Mr. Ramirez-Lujan traveling on a rural road used only by locals and drug traffickers.  Not recognizing Mr. Ramirez-Lujan as a local, the agent

---

[65] *See, e.g., United States v. Ramirez-Lujan*, 976 F.2d 930, 933–34 (5th Cir. 1992).

[66] 622 F.2d 830 (5th Cir. 1980).

[67] *Id.* at 846.

[68] *Id.* at 842.

[69] 976 F.2d 930.

pulled over Mr. Ramirez-Lujan's truck.  A subsequent search uncovered 308 pounds of

marijuana.[70]  Although the Circuit later concluded that the stop could not be justified under the

multi-factored reasonable suspicion test, the Circuit found the good-faith exception barred

application of the exclusionary rule.  The Circuit explained it was objectively reasonable for the

agent to assume the stop was supported by reasonable suspicion, and the agent acted in good

faith on that assumption.[71]

        Along the same lines, in *United States v. De Leon-Reyna*,[72] the Fifth Circuit found

evidence obtained during a search incident to an unlawful stop to be admissible pursuant to the

good-faith exception.  A border patrol agent, relying on an erroneous license plate check, pulled

over Mr. De Leon-Reyna's truck and discovered a half-ton of cocaine in a false compartment.

The license plate check provided to the officer had led him to believe the truck or the license

plate was stolen.  However, neither the truck nor the plate were in fact stolen.  Although the

district court excluded the evidence and held the agent's arrest based on this information was

unlawful,[73] the Fifth Circuit reversed because of the officer's objective, good-faith reliance on the

erroneous information when making the arrest.  Specifically, the court referenced the need to

balance the deterrent effect of the exclusionary rule with the substantial social cost the rule

---

[70] *Id.* at 931–32.

[71] *Id.* at 932–34.

[72] 930 F.2d 396 (5th Cir. 1991).

[73] *Id.* at 398–99.

imposes.[74]

        In *United States v. Ortiz*,[75] the District Court of the Central District of California held that an airline ticket agent violated the defendant's Fourth Amendment rights by executing a warrantless search of the defendant's luggage.  The agent, acting under the airline's FAA-mandated security program, determined that the defendant exhibited behavior typical of a hijacker.  During the later search of the bags, the agent discovered marijuana and cocaine and the defendant was arrested.  The court held that the search was unlawful under FAA regulations.  Despite the unlawful search, the court held the good-faith exception saved the evidence from exclusion.[76]  The court reasoned that the exclusionary rule was meant to deter police conduct, a result that would not be reached in this case because the agent acted as any reasonable agent would in the circumstances,[77] and "'[e]xcluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'"[78]  The Ninth Circuit affirmed the ruling in an unpublished decision.[79]

        Some state courts have also concluded that the good-faith exception extends to

---

        [74] *Id.* at 400–01.

        [75] 714 F. Supp 1569 (C.D. Cal 1989)

        [76] *Id.* at 1580.

        [77] *Id.* at 1577–78.

        [78] *Id.* at 1578 (quoting *Leon*, 468 U.S. at 920).

        [79] *See United States v. Valenzuela*, No. 88-5307, 1990 WL 29138 (9th Cir. Mar. 19, 1990).

warrantless search situations.  For example, in *State v. Williams*,[80] the Wisconsin Court of

Appeals affirmed the trial court's refusal to suppress evidence of a concealed semiautomatic

weapon discovered incident to an unlawful stop on suspicion of car theft.  The arresting officers

relied on an erroneous "hot sheet" detailing license plates of stolen cars.  The information was

out of date when the officers detained Williams and discovered a concealed semiautomatic

weapon in the car.[81]  Citing the arresting officers' good faith in executing the stop, the court

denied the defendant's appeal.  The court noted that the purpose of the exclusionary rule is to

deter police misconduct and, in this case, there was no misconduct to deter, making the good-

faith exception particularly applicable.[82]

The importance of the objective reasonableness inquiry is, perhaps, best illustrated by

*United States v. Lopez-Valdez*.[83]  In this case, the Fifth Circuit found the good-faith exemption to

be inapplicable to a warrantless arrest because the arresting officer's actions were not objectively

reasonable.  In 1996, an officer stopped Ms. Lopez's vehicle near the border for driving with a

partially broken, yet still fully functional, taillight.  The officer asked Ms. Lopez and several of

her passengers about their immigration status.  When Ms. Lopez and her passengers failed to

produce the needed documents, the officer arrested them.[84]  The court excluded the evidence

---

[80] No. 96-2593-CR, 1998 WL 248839 (Wis. Ct. App. May 19, 1998).

[81] *Id.* at *1.

[82] *Id.* at *2–3.

[83] 178 F.3d 282 (5th Cir. 1999).

[84] *Id.* at 284–85.

obtained as a result of the illegal stop, finding the good-faith exception inapplicable.  Basically, the court held that while the officer's belief that driving with a partially broken taillight violated traffic laws was in good faith, it was not objectively reasonable.[85]  Ten years earlier, in 1986, the Texas Court of Appeals had held that police officers had no authority to stop vehicles merely because of a partially broken taillight.  In Ms. Lopez's case, therefore, Fifth Circuit held that no well-trained officer could reasonably believe otherwise ten years after the decision.[86]

These cases all have key similarities.  In each case, the court inquired into the objective reasonableness of the officer's actions.  Each court also focused on the deterrence rationale of the exclusionary rule.  These cases also suggest objective reasonableness and deterrence are the key inquiries — not the possession of a warrant or reliance on a third party.

In the end, in this case, even assuming that Officer Nixon violated state law by arresting Mr. Planells-Guerra and that the exclusionary rule applied to the violations, the good-faith exception saves the evidence from exclusion.  To assess an officer's objectivity and the reasonableness of an officer's actions, the court must consider "'all of the circumstances'" and "assume that the executing 'officers . . . have a reasonable knowledge of what the law prohibits.'"[87]  The court's good-faith inquiry, therefore, is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the

―――――――――――――

[85]  *Id.* at 286–89.

[86]  *Id.* at 289.

[87]  *United States v. Corral-Corral*, 899 F.2d 927, 923 (10th Cir. 1990) (quoting *Leon*, 468 U.S. at 922 n.23, 919 n.20).

[arrest] was illegal."[88]  In this case, any mistake of law by Officer Nixon and his reliance thereon

were objectively reasonable.  First, as discussed before, due to the ongoing nature of the crime,

Officer Nixon could have reasonably thought the "in-presence" requirement of section 77-7-2

was satisfied.  Next, as discussed before, *Bovo* presents such a similar factual situation, it would

be objectively reasonable for Officer Nixon to think that as long as he had probable cause to

effect an arrest, the "in-presence" requirement of section 77-7-2 regarding public offenses would

not invalidate the arrest.

Accordingly, the good-faith exception bars the suppression of the evidence in this case.

## CONCLUSION

For all these reasons, the court DENIES Mr. Planells-Guerra's motion to reconsider his

motion to suppress [#23].

DATED this 23rd day of August, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge

---

[88] *Leon*, 468 U.S. at 922 n.23.